No. 13-4507

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

YVONNE CASTLE TAYLOR,

Appellant.

*Appeal from the United States District Court for the
District of Maryland, Northern Division
Honorable George L. Russell, III, District Judge*

BRIEF OF APPELLEE
UNITED STATES OF AMERICA

Rod J. Rosenstein
United States Attorney

Evan T. Shea
Assistant United States Attorney

36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

March 24, 2014    *Attorneys for the Appellee*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION  ........................................................1

STATEMENT OF THE ISSUES  ...........................................................1

STATEMENT OF THE CASE...............................................................2

STATEMENT OF FACTS ....................................................................4

SUMMARY OF ARGUMENT ..............................................................8

ARGUMENT .....................................................................................8

I.  THE DISTRICT COURT PROPERLY DENIED THE DEFENDANT'S
MOTIONS TO SUPPRESS……………………………………...…….8

    A.  Standard of Review .............................................................8

    B.  The Government's Border Search Authority Justified the Stopping and
Questioning of Taylor at the Gate…………………………...…….9

    C.  At the Conclusion of Their Interview of Taylor at the Gate, CBP
Officers Had Probable Cause to Arrest Her for Bulk Cash
Smuggling…………………………..…………………………11

        1. Taylor's Contradictory Statements About the Amount of Cash She
Possessed, Followed By Her Admission That She Had $100,000
Concealed in Her Clothing, Established Probable Cause to
Arrest……………………………………………………..11

        2. It Was Reasonable to Infer that Taylor Had Not Filed a CMIR….16

II.  THE DEFENDANT WAIVED HER RIGHT TO APPEAL VENUE…....19

    A.  Standard of Review…………………………………………..…19

i

B. Taylor Waived Any Right to Appeal Venue as Part of Her Knowing and Voluntary Guilty Plea………………………………………………………..19

C. Taylor Also Waived any Challenge to Venue by Failing to Raise the Issue in the District Court…………………………………………………………22

CONCLUSION ....................................................................................................23

STATEMENT REGARDING ORAL ARGUMENT ...........................................24

CERTIFICATE OF COMPLIANCE ....................................................................25

CERTIFICATE OF SERVICE .............................................................................26

# TABLE OF AUTHORITIES

## CASES

*Michigan v. DeFillippo*, 443 U.S. 31 (1979) ............................................................11

*Ornelas v. United States*, 517 U.S. 690 (1996) ..............................................12, 17

*United States v. Aguebor*, 1999 WL 5110 (4th Cir. 1999) ....................................10

*United States v. Aragon*, 1998 WL 454085 (4th Cir. 1998) ..................................10

*United States v. Attar*, 38 F.3d 727 (4th Cir. 1994) ...............................................19

*United States v. Blick*, 408 F.3d 162 (4th Cir. 2005) ..............................................19

*United States v. Braks*, 842 F.2d 509 (1st Cir. 1988) ...............................................9

*United States v. Bridges*, 741 F.3d 464 (4th Cir. 2014) ..........................................19

*United States v. Dickey-Bey*, 393 F.3d 449 (4th Cir. 2004) ....................................11

*United States v. Hamlin*, 319 F.3d 666 (4th Cir. 2003) .............................................9

*United States v. Humphries*, 372 F.3d 653 (4th Cir. 2004) ....................................12

*United States v. Jiminez*, 421 F. Supp. 2d 1008 (W.D. Tex 2006) ..............12, 17, 18

*United States v. Johnson*, 599 F.3d 339 (4th Cir. 2010) ........................................12

*United States v. Jones*, 308 F.3d 425 (4th Cir. 2002) ...............................................3

*United States v. Kelly*, 592 F.3d 586 (4th Cir. 2010) ................................................9

*United States v. Kelly*, 302 F.3d 291 (5th Cir. 2002) ..............................................10

*United States v. Oriakhi*, 57 F.3d 1290 (4th Cir. 1995)...............................................9

*United States v. Oyekan*, 786 F.2d 832 (8th Cir. 1986)..........................................10

*United States v. Santiesteban*, 825 F.2d 779 (4th Cir. 1987) .................................22

*United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001)....................................19, 22

*United States v. Tatoyan*, 474 F.3d 1174 (9th Cir. 2007)...........................14, 15, 16

*United States v. Vega-Barvo*, 729 F.2d 1341 (11th Cir. 1984)...............................10

## FEDERAL STATUTES

18 U.S.C. § 3231  .........................................................................................1

18 U.S.C. § 3742(a) ......................................................................................1

28 U.S.C. § 1291  .........................................................................................1

31 U.S.C. § 5316..........................................................2, 3, 11, 13, 14, 21

31 U.S.C. § 5322.....................................................................2, 11, 14

31 U.S.C. § 5332.........................................................2, 11, 13, 14, 21

iv

## STATEMENT OF JURISDICTION

The district court (George L. Russell, III, J.) had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231.   Taylor pled guilty, and the district court sentenced her to five years' probation, entering its judgment on June 24, 2013. JA 12-16.[1]   This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.      Whether the district court properly ruled that officers had probable cause to arrest Taylor for bulk cash smuggling when, at the gate about to board a flight to Jamaica, she admitted that she had over $100,000 in cash concealed on her person, after first claiming to have only $2,000, and then $3,000.

II.      Whether Taylor waived any right to appeal venue where (a) in her plea agreement, she waived her rights to appeal any issue except the court's rulings on her motions to suppress, and (b) she failed to raise the issue of venue at any point in the district court.

---

[1]      The district court entered an amended judgment on July 2, 2013.   JA 17-21. The only change from the original judgment was an additional finding that Taylor posed a low risk of substance abuse, and the suspension of the condition that Taylor be drug tested while on probation.   JA 18.

1

## STATEMENT OF THE CASE

Taylor was arrested on May 28, 2011 and a criminal complaint was filed in the Northern District of Georgia on the same day.   JA 36-41.   On June 2, 2011, a grand jury in the District of Maryland indicted Taylor for bulk cash smuggling, in violation of 31 U.S.C. § 5332(a).   JA 6-8.   Taylor made her initial appearance and was arraigned in the District Court for the District of Maryland on June 10, 2011. JA d. (*United States v. Taylor*, Crim. No. L-11-310, Doc. Nos. 4, 5 (D. Md.)).[2]

Taylor moved to suppress evidence seized from her and statements made by her on May 28, 2011, after she was stopped, detained, and then arrested as she was about to board a plane bound for Jamaica from Atlanta Hartsfield International Airport.   JA 22-23, 30-35.   Taylor alleged that the officers' stop of her and her subsequent detention violated the Fourth Amendment.   JA 31.

At a pretrial hearing, the district court denied the motions.   JA 210.   The district court held that Taylor was initially stopped and questioned as part of a border search that required neither probable cause nor reasonable suspicion.   JA 210. Additionally, the district court found that once Taylor had, in response to questions from United States Customs and Border Patrol ("CBP") officers, stated that she had

---

[2]    Taylor eventually pled guilty to an information charging a violation of 31 U.S.C. §§ 5316 and 5322 in Crim. No. GLR-13-80, but initially was charged by indictment with bulk cash smuggling, in violation of 31 U.S.C. § 5332 in Crim. No. L-11-310.

2

$3,000 in cash on her person, then stated that she had $2,000 on her person, and then admitted that she had $100,000 concealed under her clothing in her waist area, the CBP officers had probable cause to arrest her for bulk cash smuggling.   JA 209.[3]

On February 22, 2013, before trial, Taylor agreed to plead guilty to failing to file a required report of international transportation of currency, in violation of 31 U.S.C. § 5316, and the government agreed to dismiss the indictment charging bulk cash smuggling.   JA 319.   The parties entered a conditional plea agreement, in which Taylor reserved the right to appeal the district court's rulings on her motions to suppress.   JA 323.   Taylor, however, agreed to waive her appellate rights with respect to all other issues.   JA 323.   On February 25, 2013, the district court held an arraignment at which Taylor entered her plea of guilty to the information charging

---

[3]       The district court also denied Taylor's motion to suppress statements, both at the January 10, 2013 hearing and at a February 13, 2013 hearing, after Taylor filed a motion for reconsideration.   JA 226-28; JA 280.   Taylor appears to argue on appeal that her statements should have been suppressed as the fruit of an illegal arrest, but she does not press the argument that the government violated the 5th or 6th Amendments, or her *Miranda* rights.   *See* Def. Br. 9 (stating that the issue presented is whether "CBPO Abdullah Shahbaaz and Chris Horton lacked reasonable-suspicion to stop and probable cause to arrest Yvonne Taylor for bulk cash smuggling and therefore, the district court erred in denying Ms. Taylor's motion to suppress her arrest, the custodial statements she made to law enforcement following her illegal arrest, and the currency seized pursuant to the illegal arrest."); *Id.* at 34 ("Ms. Taylor's arrest is a clear violation of the 4th Amendment and the district court erred in failing to suppress her illegal arrest, the currency seized and the statements she made to SAC [*sic*] Roy Rutherford.").   The defendant has, accordingly, waived any non-Fourth Amendment claim.   *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002).

3

the failure to file.   JA 331.   At that hearing, Taylor stated that she understood that while she reserved the right to appeal the denial of her motions to suppress, she waived her right to appeal all other issues.   JA 347.   Taylor was sentenced on June 24, 2013.   This timely appeal followed.

## STATEMENT OF FACTS

On May 28, 2011, Taylor began a scheduled trip from Baltimore, Maryland to Montego Bay, Jamaica.   JA 133.   The trip involved Taylor flying from Baltimore Washington International Airport ("BWI") to Atlanta Hartfield International Airport ("Atlanta Hartsfield"), where she was to change planes and continue on to Montego Bay.   JA 133.   Homeland Security Investigations ("HSI") Special Agent Mary Horn, stationed in Baltimore, had received a tip that Taylor would be attempting to smuggle a large amount of currency out of the United States during this trip.   JA 133.   Horn passed this information on to HSI Special Agent Roy Rutherford, who was stationed in Atlanta.   JA 133.

Rutherford arranged for CBP officers to have Taylor searched at Atlanta Hartsfield.   JA 134.   On the morning of May 28, 2011, however, Horn called Rutherford and informed him that Taylor had been searched at BWI and the officer searching her had found no currency on Taylor's person.   JA 135.   Based on this information, Rutherford called CBP and informed them of the results of the search at

4

BWI.   JA 135.   The two CBP officers who were prepared to stop and question

Taylor, Abdullah Shahbaaz and Christopher Horton, decided to proceed with the

search despite the results of the search at BWI.   JA 83.   Shahbaaz, a ten-year

veteran of the CBP, conducted targeted stops of individuals in the airport as part of

his regular duties and did so eight to nine times a week, on average.   JA 79.

Officers Shahbaaz and Horton planned to stop and question Taylor as she

boarded her flight.   JA 70.   Shahbaaz and Horton only had Taylor's name; they did

not have a physical description of her or other information to identify her on sight.

JA 71.   Accordingly, Shahbaaz and Horton planned to stop each passenger on

Taylor's flight as he or she boarded, ask for the passenger's name, and then ask

standard questions regarding the passenger's travel, including how much currency

he or she was carrying.   JA 71.

At the gate, Shahbaaz questioned Taylor upon her turn in line.   JA 72.[4]

Shahbaaz asked Taylor how much money she was carrying.   JA 72.   Taylor

hesitated, looked up at the ceiling, and then said that she had $3,000.   JA 72.

---

[4]      Shahbaaz, Rutherford, and Horton had different recollections as to Taylor's
place in line.   Shahbaaz remembered her being roughly the eighth, ninth, or tenth
passenger he questioned.   JA 85.   Horton's testimony implied that Taylor was one
of the first individuals questioned.   JA 181.   And Rutherford remembered
Shahbaaz stating that Taylor was the second person in line.   JA 138.   This factual
issue, however, is irrelevant to the issue on appeal, and the district court in any event
resolved the suppression issue in favor of the government.

Because of this halting response, Shahbaaz asked her again how much money she was carrying.   JA 72.   This time, Taylor said that she was carrying $2,000, and then looked out the window.   JA 73.   This inconsistency, and Taylor's demeanor, caused Shahbaaz to question Taylor further.   JA 73.   Shahbaaz asked if Taylor was sure how much money she had on her person, and Taylor then said she did not know how much money she had.   JA 73.   Shahbaaz continued to question Taylor about how much money she was carrying, and finally she admitted that she had more than $100,000 on her person.   JA 73.   Shahbaaz asked her how she knew that it was more than $100,000, and Taylor responded, "[T]hey didn't tell me how much money it was."   JA 73.   When Shahbaaz asked where the money was, Taylor pointed to her midsection and said "it's there," implying that the money was concealed under her clothing in her waist area.   JA 73.

At that point, Officers Shahbaaz and Horton escorted Taylor to a "secondary area" – an area separate from the public areas of the airport – to conduct a pat-down search of her person and to confirm the exact amount of cash.   JA 75.   At the secondary area, another CBP Officer, Alla Swords, conducted the pat-down and discovered the cash concealed under Taylor's clothing.   JA 77-78, 114-15. Officers Shahbaaz and Horton then counted the money.   JA 77.   Rutherford was

6

contacted, and he traveled to the secondary area, where he took over Taylor's

processing and questioning.    JA 139.

Rutherford took Taylor into an interview room and informed her of her rights

under *Miranda v. Arizona* in an audio-recorded interview.    JA 140.    Taylor

invoked her right to remain silent, and Rutherford ended the interview, turned off the

recorder, and left the interview room.    JA 143.    Sometime later, Rutherford

returned to the interview room, and began a booking process in which he obtained

basic biographical information from Taylor.    JA 143.    During that booking

process, Taylor spontaneously stated that she had "done this trip" with bulk currency

twice before and that "the money was going into a bank."    JA 143.    Rutherford

turned the audio recorder back on and re-advised Taylor of her *Miranda* rights.    JA

143.    Taylor then stated that she wanted to talk to a lawyer, and Rutherford again

ended the interview and turned off the recorder.    JA 143.    After Rutherford

completed the booking process, he and another agent transported Taylor to the

Atlanta City Detention Center.    JA 151.    During that trip, Taylor – again

spontaneously – stated "I can't go to jail," and asked what she had to do to avoid

going to jail.    JA 151.    Rutherford told Taylor that she could only help herself by

telling the truth, but that because she had invoked her *Miranda* rights, he could no

longer interview her.    JA 152.

## SUMMARY OF ARGUMENT

I.      The district court properly denied Taylor's motions to suppress.   The government's border search authority permitted officers' initial questioning of her, and Taylor's responses to those questions – including her inconsistent statements about the amount of money she had on her person, and her admission that she had over $100,000 concealed on her body – gave officers probable cause to arrest her.

II.      Taylor waived her right to appeal the issue of venue.   Both in her plea agreement and at her arraignment where she entered her guilty plea, the defendant expressly waived her appellate rights to any issue save the denial of her motions to suppress.   Indeed, the fact that Taylor never raised this issue in the district court underscores her waiver of the right to challenge venue in this Court.

## ARGUMENT

## I.      THE DISTRICT COURT PROPERLY DENIED THE DEFENDANT'S MOTIONS TO SUPPRESS.

### A.      Standard of Review

This Court reviews factual findings underlying the district court's denial of a motion to suppress for clear error and legal conclusions *de novo*.   *United States v.*

*Kelly*, 592 F.3d 586, 589 (4th Cir. 2010).   When a motion to suppress has been

denied, this Court reviews the evidence in the light most favorable to the

government.   *United States v. Hamlin*, 319 F.3d 666, 671 (4th Cir. 2003).

B.    **The Government's Border Search Authority Justified the
      Stopping and Questioning of Taylor at the Gate.**

Officers Shahbaaz's and Horton's initial stop and questioning of Taylor

constituted a border search, for which no probable cause or reasonable suspicion was

necessary.   *United States v. Oriakhi*, 57 F.3d 1290, 1295-97 (4th Cir. 1995)

(holding that border searches of individuals traveling from inside the United States

to outside the United States are inherently reasonable and need not be based on

probable cause).   Accordingly, the initial stop and questioning of Taylor at the gate

was both legal and appropriate.

Shahbaaz's and Horton's stop and questioning of Taylor was a routine border

search.   Whether a stop is routine does not depend on whether the officers

conducting it were targeting a specific individual rather than conducting a random

screening.   Instead, courts assess whether a search is "routine" by its "degree of

invasiveness and intrusiveness."   *United States v. Braks*, 842 F.2d 509, 512-13 (1st

Cir. 1988).   This Court has held that "only strip searches and body cavity searches

have consistently been considered sufficiently intrusive to be non-routine."   *United*

9

*States v. Aguebor*, 1999 WL 5110, at *3 (4th Cir. 1999) (unpub.) (citing *Braks*);

*United States v. Aragon*, 1998 WL 454085, at *2 (4th Cir. 1998) (unpub.) (same).

Other circuits have likewise held that a pat-down search is "routine" for purposes of

the border search exception.   *See*, *e.g.*, *United States v. Kelly*, 302 F.3d 291, 294

(5th Cir. 2002) ("[O]rdinary pat-downs or frisks, removal of outer garments or

shoes, and emptying of pockets, wallets, or purses are all routine searches and

require no justification other than the person's decision to cross our national

boundary."); *United States v. Oyekan*, 786 F.2d 832, 835 (8th Cir. 1986) ("[T]he

pat-down and search of the women's luggage and purses were within the scope of

routine customs practice unrestricted by the Fourth Amendment."); *United States v.

Vega-Barvo*, 729 F.2d 1341, 1345 (11th Cir. 1984) (same).

Shahbaaz's and Horton's stop and questioning of Taylor at the gate was less

invasive than even a pat-down, which would have been permissible under the

above-cited law.[5]   Indeed, any international traveler knows that being stopped and

questioned during international travel is a regular occurrence.

---

[5]    The above-cited caselaw also makes clear that the border search authority
gave Shahbaaz and Horton the power to take Taylor to the secondary area and to
conduct a pat-down of her there.   Because the officers had sufficient probable cause
to arrest Taylor after the interview at the gate (as explained below), whether the
border search authority permitted such a step absent probable cause is moot.

C.    **At the Conclusion of Their Interview of Taylor at the Gate, CBP Officers Had Probable Cause to Arrest Her for Bulk Cash Smuggling.**

1.    Taylor's Contradictory Statements About the Amount of Cash She Possessed, Followed By Her Admission That She Had $100,000 Concealed in Her Clothing, Established Probable <u>Cause to Arrest</u>.

Once Officer Shahbaaz completed his questioning of Taylor at the gate, he had probable cause to arrest her for bulk cash smuggling, in violation of 31 U.S.C. § 5332, and for failure to file a required report, in violation of 31 U.S.C. §§ 5316 and 5322, based on her inconsistent statements and her admission that she had over $100,000 concealed in her clothing.   It is well settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime.   *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) (citations omitted).   "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."   *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

11

To determine whether an officer has probable cause to make an arrest, the Court must view the "totality of the circumstances." *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004). In assessing the totality of the circumstances it is appropriate for the Court to consider specifically "an officer's practical experience and the inferences the officer may draw from that experience." *Id.*

A reviewing court extends deference to the reasonable inferences drawn by police officers. *See Ornelas v. United States*, 517 U.S. 690, 699-700 (1996) ("A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference."); *United States v. Johnson*, 599 F.3d 339, 342 (4th Cir. 2010) (same).

In that regard, a district court from the Western District of Texas has found that one can infer that an individual concealing a large amount of cash and headed towards the border does not intend to file the required report identifying the transportation of those funds. *United States v. Jiminez*, 421 F. Supp. 2d 1008, 1013 (W.D. Tex 2006) ("If Two Hundred Seventeen Thousand Dollars ($217,000.00) has been concealed in a vehicle traveling from the United States to Mexico, it is reasonable to infer no declaration or reporting will occur at the border."). The

12

district court in this case made the same point.   *See* JA 204 ("I respect [defense

counsel's] argument, but when you say there's not one scintilla of evidence that

somehow [Taylor] wasn't disclosing [the amount of cash], I think that belies the

facts that, if you assume are true, she had secreted a hundred thousand dollars . . . on

her person.").

Officers Shahbaaz and Horton took Taylor into custody based on probable

cause to believe she had committed the offense of bulk cash smuggling.   There are

four elements to the crime of bulk cash smuggling: (1) that the defendant knowingly

concealed currency on her person or in any article of luggage, merchandise, or other

container; (2) that the defendant acted with the intent to avoid the currency reporting

requirement of Section 5316 of Title 31, U.S. Code; (3) that the amount of the

currency was over $10,000; and (4) that the defendant transported, transferred, or

attempted to transport or transfer, the currency from a place in the United States to a

place outside the United States.   *See* 31 U.S.C. § 5332(a).   Section 5316 of Title 31

requires an individual transporting more than $10,000 in cash out of the United

States to file a currency and monetary instrument report ("CMIR").   *See* JA 234

(blank copy of a CMIR).

Although Taylor was not initially charged with failing to file a CMIR (the

crime to which she ultimately pled guilty), the officers also had probable cause to

13

believe she had committed that crime.   Three elements must be satisfied for an individual to be criminally liable for failing to file a CMIR: (1) the defendant must knowingly transport currency or monetary instruments in excess of $10,000 into or out of the United States; (2) the defendant must know that she had a legal duty to file a report of the amount of currency or money instruments transported; and (3) the defendant must willfully fail to file the report concerning the transportation or monetary instruments.   *See* 31 U.S.C. §§ 5316 and 5322.

Criminal failure to file, in violation of Sections 5316 and 5322, and bulk cash smuggling, in violation of § 5332 overlap, but each have an element that the other does not.   *See United States v. Tatoyan*, 474 F.3d 1174, 1180-82 (9th Cir. 2007) (bulk cash smuggling and criminal failure to file do not merge under the *Blockburger* test because each has an element that the other does not).   Both crimes require that the individual know that there is a requirement to file a form when transporting more than $10,000 out of the United States.   Bulk cash smuggling requires that the individual intend to fail to file a CMIR, and criminal failure to file requires that the individual fail to file that report.   To be guilty of bulk cash smuggling, however, the individual must conceal the currency in his or her clothing or luggage, an element not present in criminal failure to file.   *Id.* at 1181. Additionally, an individual must willfully fail to file a CMIR to be guilty of criminal

14

failure to file, in violation of Sections 5316 and 5322, which is not an element of

bulk cash smuggling.   *Id.* at 1180.   As discussed more fully below, Taylor claims

that the officers did not have probable cause to believe that she had failed or

intended to fail to file a CMIR – essentially overlapping elements of both bulk cash

smuggling, in violation of Section 5332 and criminal failure to file, in violation of

Section 5316.

Officers Shahbaaz and Horton knew the following facts, which gave them

probable cause to arrest Taylor for bulk cash smuggling and criminally failing to file

a CMIR:

1)   Taylor was about to board a plane leaving the country, bound for Montego
     Bay, Jamaica (JA 70);

2)   Taylor was nervous when asked about how much currency she had on her
     person, hesitating and looking away (JA 72);

3)   Taylor first said she had $3,000; then said she had $2,000; then said she
     did not know how much money she had; then finally admitted that she had
     over $100,000 on her person, while explaining that "they didn't tell me
     how much money it was" (JA 72-73); and

4)   Finally, when asked where the money was, Taylor pointed to her
     midsection, indicating that the money was secreted under her clothing in
     that area (JA 73).

These facts established probable cause to arrest the defendant.   Taylor, who

was about to board a flight out of the country, had admitted to having over $100,000

15

concealed on her person.   And, based on common sense and the officers'
experience, it was reasonable to infer from the concealment, Taylor's demeanor, and
her contradictory statements about the amount, that Taylor had not filed a CMIR and
intended not to do so – the related elements of bulk cash smuggling and criminal
failure to file, probable cause for which, as discussed more fully below, Taylor
claims was lacking.

2.    It Was Reasonable to Infer that Taylor Had Not Filed a CMIR.

As stated above, it was reasonable for the agents to infer that Taylor had not
and did not intend to file a CMIR from the fact that she had a large amount of
currency concealed on her person, and from the fact that she initially lied about how
much money she had.   The bulk of Taylor's argument on this first issue is devoted
to the assertion that because no officer checked whether Taylor filed a CMIR, there
was no probable cause to believe that Taylor had not done so – an element of both
bulk cash smuggling and criminal failure to file – and thus there was no probable
cause to arrest her.[6]   This argument fails.   The district court properly credited the

_____

[6]   Taylor also appears to argue that Shahbazz and Horton violated internal CBP
policy by not providing Taylor a copy of the CMIR form at the gate.   Def. Br. 29-30
n.4.   Even if an agency policy required them to do so (and Taylor provides no
citation to any such policy), an officer's violation of agency procedures is not a
defense to bulk cash smuggling.   *See United States v. Tatoyan*, 474 F.3d 1174, 1178
(9th Cir. 2007) (affirming bulk cash smuggling conviction and finding that officer's
failure to provide defendant a form during a border encounter did not violate the

reasonable inferences drawn by the officers and simple common sense – that they were confronting a person who had concealed a large amount of currency in her clothing, had lied about the amount, and who had not filed a report declaring it.  *See Ornelas*, 517 U.S. at 699.[7]

The court's reasoning in *United States v. Jimenez*, cited above, is instructive, and mirrors the district court's reasoning in the present case.   There, the two

_____

defendant's due process rights or nullify the defendant's intent to evade the currency reporting requirement).

Taylor also appears to argue that the government and the district court were under the impression that the failure to file a CMIR was not an element of the bulk cash smuggling charge.   Def. Br. 31.   Taylor, however, quotes selectively from an objection made by the government during questioning.   In that objection, the government was simply making the point that whether or not Officers Shahbaaz and Horton provided Taylor a CMIR form to fill out was irrelevant, for the reasons explained above.   The government accurately stated the law at the hearing, *i.e.*, that both failure to file the form and intent to evade that reporting requirement were elements of bulk cash smuggling.   JA 201-02.

[7]     Taylor states that concealment and failure to file a CMIR are two separate elements of bulk cash smuggling, and that Section 5332(a) "never makes the concealment of currency a presumption for a travelers intent to evade a reporting requirement of § 5316."   Def. Br. 29-30 n.4.   Taylor essentially argues that the fact that she concealed the currency can only support the "concealment" element, and because no presumption is written into the statute, that fact cannot support the "intent to fail to file" element.   But Taylor misapprehends the nature of inferences and of probable cause.   The Supreme Court has admonished that a precise articulation of probable cause is not possible, and that instead it is a "commonsense, nontechnical conception[] that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas*, 517 U.S. at 695.   Thus, it is perfectly reasonable to make multiple inferences from one fact that supports the existence of separate elements of a crime.

defendants were stopped in a car westbound on a highway in Ward County, Texas, 200 miles from the Mexican border.    421 F.Supp.2d at 1008-09 & n.1.    After the defendants made conflicting statements about their destination, the officers asked for and received consent to search the car.    *Id.* at 1009 & n.2.    During the search, an officer found $217,000 in a hidden compartment behind the glove compartment, where a K-9 had alerted to the presence of narcotics.    *Id.* at 1009.    At that point, the officers arrested the defendants based on probable cause to believe that they were guilty of bulk cash smuggling.    *Id.*

The defendants argued that the officers did not have probable cause to make the arrests.    *Id.* at 1008.    The court disagreed.    *Id.* at 1014-15.    With respect to evidence that the defendants did not intend to file a report and thus were attempting to commit a bulk cash smuggling offense, the court held, "[i]f Two Hundred Seventeen Thousand Dollars ($217,000.00) has been concealed in a vehicle traveling from the United States to Mexico, it is reasonable to infer no declaration or reporting will occur at the border."    *Id.* at 1013.

This Court should affirm the reasoning of the *Jimenez* court and the district court in the present case.    It was more than reasonable to infer both from Taylor's inconsistent statements regarding the amount of currency on her person, and the fact

18

that she had hidden the money on her person, that she had not filed a CMIR report and intended not to do so.

## II.    THE DEFENDANT WAIVED HER RIGHT TO APPEAL VENUE.

### A.    Standard of Review

Whether a defendant has effectively waived the right to appeal is an issue of law that this Court reviews *de novo*.   *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005).   Additionally, this Court reviews *de novo* questions of law regarding venue.   *See United States v. Stewart,* 256 F.3d 231, 238 (4th Cir. 2001).

### B.    Taylor Waived Any Right to Appeal Venue as Part of Her Knowing and Voluntary Guilty Plea.

With narrow exceptions not relevant here, a defendant's waiver of her right to appeal a conviction or sentence is valid and enforceable if such waiver was knowingly and intelligently made.   *See Blick*, 408 F.3d at 168-71; *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994).   When a defendant makes a conditional plea, reserving the right to appeal one issue, this Court deems appellate rights with respect to any issue outside the scope of that limited right to be waived.   *See United States v. Bridges*, 741 F.3d 464, 467 n.3 (4th Cir. 2014).   And venue is, of course, an issue that *can* be waived.   *United States v. Stewart*, 256 F.3d at 238.

19

Both in her plea agreement and at her arraignment where she entered her guilty plea, Taylor waived her right to appeal all issues save the district court's denial of her motions to suppress. The record makes clear that this waiver was both knowing and voluntary. The parties' plea agreement states, "[T]he Defendant reserves the right to appeal the Court's order denying her motion to suppress evidence and statements . . . The Defendant agrees that she will not appeal her conviction on any other ground." JA 323. The plea agreement was signed by both Taylor and her attorney, and in the agreement Taylor represented that she had gone over every aspect of the agreement with her attorney. JA 326.

At Taylor's arraignment on the criminal information at which she entered her guilty plea, the district court explained to Taylor her waiver of appellate rights. JA 347. Moreover, Taylor stated that she understood that waiver. JA 348. In reviewing all aspects of the plea agreement, the district court engaged in this colloquy with Taylor regarding her appellate rights:

> The Court: I'm going to turn your attention in this case to paragraph 13 of your plea agreement regarding waiver of appeal . . . I will note that in paragraph 13 of the beginning of the paragraph, the defendant's plea to Count 1 of the indictment [*sic*] is a conditional plea under Federal Rule of Criminal Procedure 11(a)(2). Specifically, the defendant reserves the right to appeal the Court's order denying . . . her motion to suppress evidence and statements . . . and that she . . . will not appeal her conviction

20

. . . on any other ground.   Did you have the opportunity to read the entire paragraph that I just read a portion of, Miss Taylor?[8]

Defendant:   Yes, sir.

The Court:  All right.   Very well.   And you agree that your guilty plea in this case is conditional upon that?

Defendant:   Yes, sir.

JA 347-48.

Three attorneys representing Taylor were present at this arraignment, and Taylor stated that she had gone over all aspects of the plea agreement with those attorneys.   JA 336.   Furthermore, Taylor affirmed that she was fully satisfied with her counsel, that those attorneys had given her good advice, and that those attorneys had zealously and effectively advocated on her behalf.   JA 335.

Finally, Taylor received a substantial benefit from pleading guilty.   She pled guilty to failing to file a CMIR, in violation of 31 U.S.C. § 5316, and in exchange the government agreed to dismiss the indictment charging her with bulk cash smuggling, in violation of 31 U.S.C. § 5332, a more serious offense.   JA 319. Furthermore, the government agreed not to oppose a sentence of probation.   JA 338.   The district court accordingly sentenced Taylor to probation.   JA 18, 391.

---

[8]      The plea agreement as presented to the Court erroneously said "he" and "his" instead of "she" and "her," and the Court's statements correcting those errors is omitted from this quote and replaced with ellipses.   JA 347.

21

In both respects, Taylor received the benefit of her bargain. This Court should ensure that the government, in turn, receives the benefit of its bargain.

The totality of the circumstances, including (1) the plea agreement; (2) the colloquy at the arraignment; (3) the benefit Taylor received from the plea; and (4) the participation of counsel throughout the process, establish that Taylor's waiver was both knowing and voluntary. Accordingly, this Court should enforce that waiver.

### C.    Taylor Also Waived any Challenge to Venue by Failing to Raise the Issue in the District Court.

Taylor has also waived any challenge to venue because she did not challenge venue in the district court. This Court has held that if an objection to venue is not raised in the district court, the issue is waived on appeal. *Stewart*, 256 F.3d at 238; *see also United States v. Santiesteban,* 825 F.2d 779, 783 (4th Cir. 1987) (finding that the defendant had waived the issue of venue by not raising it until sentencing). Taylor raises the issue of venue for the first time on appeal, and this Court should find that she has waived the issue on that basis as well.

22

## CONCLUSION

For the reasons stated, this Court should affirm the judgment below.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


_____/s/_____
Evan T. Shea
Assistant United States Attorney

March 24, 2014

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case.    The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

24

## CERTIFICATE OF COMPLIANCE

1.  This brief has been prepared using **Microsoft Word, Times New Roman, 14 Point.**

2.  EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains 5,507 words.

    I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


_____/s/_____
Evan T. Shea
Assistant United States Attorney

26

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 24, 2014, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send notice

of such filing to the following registered CM/ECF user:

Lance C. Hamm, Esq.
1200 Rodiwell Street
Houston, Texas 77002


_____/s/_____
Evan T. Shea
Assistant United States Attorney

27